IN RE: Michelle L. BROWN, Debtor.

Andrew W. Suhar, Plaintiff,

v.

Fred W. Brown, et al., Defendants.

**CASE NUMBER 14–42296**
**ADVERSARY NUMBER 15–04057**

United States Bankruptcy Court,
N.D. Ohio.

Signed November 28, 2016

Melissa Macejko, Andrew W. Suhar, Suhar & Macejko, LLC, Youngstown, OH, for Plaintiff.

Neil Schor, Harrington, Hoppe & Mitchell Ltd., Youngstown, OH, for Defendants.

## MEMORANDUM OPINION FOLLOWING TRIAL

Kay Woods, United States Bankruptcy Judge

This Memorandum Opinion provides the Court's decision following trial on the Complaint for Determination of Validity, Extent and Priority of Liens, Encumbrances and Interests ("Complaint") (Doc. 1) filed by Andrew W. Suhar, Chapter 7 Trustee ("Trustee"), on December 7, 2015. Defendant Fred W. Brown ("Defendant" or "Mr. Brown") filed Answer of Fred W. Brown ("Answer") (Doc. 17) on February 3, 2016. After the Trustee settled with or obtained default judgment against each of the other defendants,[1] Mr. Brown remains the only defendant. The Court held a trial on the remaining issues in the adversary proceeding on October 3, 2016 ("Trial"), at which time the Court took this matter under advisement.

Appearing at the Trial were (i) Andrew W. Suhar, Esq. as counsel for the Trustee; and (ii) Frederick S. Coombs, III, Esq. as counsel for the Defendant. The Court received the testimony of (i) Mr. Brown; (ii) the Trustee; and (iii) Alan Stuart Friedkin, a commercial real estate broker and the Trustee's expert witness.[2] At the conclusion of the Trial, the Court requested the parties to submit post-Trial briefs. On October 18, 2016, the Trustee filed Plaintiff's Post–Trial Brief ("Trustee's Brief") (Doc. 51) and the Defendant filed Post Hearing Memorandum of Defendant Fred W. Brown ("Defendant's Brief") (Doc. 52).

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 2012–7 entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408, and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. STATEMENT OF FACTS

Debtor Michelle L. Brown ("Debtor"), by and through Robert P. Safos, Esq., filed a voluntary chapter 7 petition on November 6, 2014 ("Petition Date"), which was denominated Case No. 14–42296 ("Main Case"). Four parcels of real property are listed in the Debtor's Schedule A, which are identified by parcel numbers 12–025435, 12–024306, 12–025434, and 12–025436. (Main Case, Doc. 1, Sched. A at 1.) These four parcels are collectively commonly known as 1472 Churchill–Hubbard Road, Youngstown, Ohio 44505 ("Real Estate"), which is the address of Page's New Ages Diner ("Page's Restaurant"). Page's Restaurant is listed as a business asset in the Debtor's Statement of Financial Affairs. (Main Case, Doc. 1, SOFA at 6.)

On December 7, 2015, the Trustee filed his Complaint to determine the validity, priority, and extent of all liens, encumbrances, and other interests relating to the

---

**1.** The Plaintiff obtained default judgment against defendants Cach, LLC (Doc. 24) and PNC Bank, National Association (Doc. 25). The Trustee entered into agreed orders with (i) The Huntington National Bank (Doc. 32); (ii) The Mahoning Valley Economic Development Corporation (Doc. 33); and (iii) the Internal Revenue Service (Doc. 38).

**2.** Mr. Friedkin is a commercial real estate broker and the Trustee's expert witness. Mr. Friedkin offered testimony concerning the rental and fair market value of the real property at issue in this case.

Real Estate. In his Answer, the Defendant asserts an interest in the Real Estate.

By way of background, the Debtor and the Defendant were married on December 7, 1991. On or about November 24, 2008, the Trumbull County Court of Common Pleas Division of Domestic Relations ("Domestic Relations Court") granted the parties Decree of Dissolution ("Divorce Decree") in Case No. 2008 DS 00356, which dissolved their marriage. The Divorce Decree also incorporated the Browns' Separation Agreement, which was entered into as of October 10, 2008. The Divorce Decree and the Separation Agreement are attached to the Complaint as Exhibit C and were admitted into evidence as Joint Exhibit IV.[3] The Separation Agreement provides for the division of the Browns' property and states:

A. The wife shall continue to operate the business known as PAGES, located at 1472 Churchill–Hubbard Rd, as its sole owner. The Husband hereby relinquishes any ownership or profits from PAGES. Wife agrees that Husband shall be held harmless from any past, present, or future liabilities from business operations of PAGES.

(Jt. Ex. IV, Sep. Agr. Art. V.)

On October 22, 2008, 12 days after entering into the Separation Agreement, the Browns entered into Contract for Installment Purchase of Real Estate ("Contract"), which purports to be a conveyance of the Real Estate. The Contract is included in Exhibit B of the Complaint and was admitted into evidence as Joint Exhibit V. The Contract states, "This agreement is between Fred W. Brown and Michelle L. Brown, D.B.A. Page's New Ages Diner, vendor, and Michelle L. Brown, vendee [sic] in consideration of Divorce/Dissolu-

tion proceedings ...." (Jt. Ex. V at 1.) The Contract is not styled as an amendment to or modification of the Separation Agreement and it was not submitted to the Domestic Relations Court for review and approval. The Contract was recorded in the Trumbull County Recorder's Office on or about November 24, 2008 after entry of the Divorce Decree.

In his Answer, the Defendant alleges that in June of 2011 the Debtor defaulted on her obligations under the Separation Agreement and the Contract by failing to pay (i) amounts due on mortgages held by Sky Bank (now Huntington National Bank) ("Bank") and the Mahoning Valley Economic Development Corporation ("MVEDC"); (ii) real estate taxes; (iii) sewer charges; (iv) property insurance; and (v) amounts due on a line of credit extended by PNC Bank. (Ans. ¶ 7.) The Defendant asserts a one-half undivided ownership interest in the Real Estate as a result of the Debtor's alleged default. (*Id.* ¶ 8.)

The Defendant also asserts "a lien interest by way of subrogation to the claims of [the Bank], [the MVEDC], Trumbull County Treasurer and Trumbull County Water & Sewer Authority ...." (*Id.* ¶ 10.) The Defendant bases his subrogation defense on certain payments he represents he made to these entities between 2011 and 2015. (*Id.* ¶ 9.) The Defendant also represents that he made improvements and repairs to the Real Estate and claims that his expenditures are "creditable" against the Debtor's interest because she failed to maintain the Real Estate and committed waste to the premises. (*Id.* ¶ 11.)

The Defendant acknowledged at trial that he (i) did not ask the Trustee to pay any of the expenses he claims to have

---

**3.** The Court admitted many exhibits into evidence, but only two are referred to herein—Joint Exhibit IV and Joint Exhibit V.

made post-petition relating to the Real Estate; (ii) did not inform the Trustee that any repairs or improvements to the Real Estate were necessary or desirable; and (iii) never made demand for repayment from the Trustee for the expenses he made post-petition.

## A. Trustee's Brief

In the Trustee's Brief, the Trustee argues that the Debtor became the sole owner of the Real Estate by virtue of the Divorce Decree, which granted the parties a divorce on or about November 24, 2008 and transferred the Real Estate to the Debtor. Because the Divorce Decree transferred the Real Estate to the Debtor, the Trustee asserts that none of the subsequent actions of either the Debtor or the Defendant defeat this unconditional transfer.

## B. Defendant's Brief

The Defendant argues that the interests of the parties in the Real Estate is a matter of state law, not bankruptcy law. (Def.'s Br. at 2.) He argues that the Separation Agreement "does not specifically address the real estate owned by the Browns upon which the business [Page's Restaurant] operated." (Id. at 3.) The Defendant argues that the October 22, 2008 Contract, which was entered into 12 days after he and the Debtor entered into the Separation Agreement, was part of the parties' overall dissolution of their marriage. (Id. at 4.) He postulates that, since the Debtor was not able to completely fulfill her obligations to pay the mortgages, taxes, and insurance, it is "undisputed" that she defaulted on the Contract. He asserts "title of Defendant, Fred Brown's, half interest in the real estate did not transfer to Michele [sic] Brown." (Id. at 5.) The Defendant states that the Debtor abandoned her entire interest in the Real Estate when she threw the keys to the Defendant and said that she was "done." (Id.)

The Defendant states that the Trustee's position is "untenable" based on the Trustee's conduct in (i) never inspecting the Real Estate; (ii) never insuring the Real Estate; (iii) taking no action to protect the premises through necessary improvements; (iv) making no demand of Defendant for rent; and (v) taking no action to evict Defendant. (Id.)

The Defendant states that even if the language in the Separation Agreement can be read to address disposition of the Real Estate (as opposed to just the business operation of Page's Restaurant), "the law of Ohio is clear that the parties to a domestic relations proceeding are free to modify or amend a property division in a settlement agreement or a decree of a domestic relations court." (Id. at 6.) As a consequence, he states that the Trustee's reliance on the language in the Separation Agreement is misplaced because the parties modified how disposition of the Real Estate would occur by entering into the Contract.

The Defendant further states that he has a lien on the Real Estate for the real estate taxes based on O.R.C. §§ 323.11 and 323.48. (Id. at 7.) He also argues that he has a subrogation claim for the real estate taxes pursuant to 11 U.S.C. § 509. (Id.) He concedes that he continued to be liable for taxes, as an owner of the Real Estate, but he argues that, pursuant to the Contract, he became a surety rather than a primary obligor. (Id. at 8.)

The Defendant contends that he is subrogated to the claims of the Bank and the MVEDC for the payments he made to these entities post-petition. He acknowledges that subrogation usually is not applicable until the debt is paid in full and that there is still debt owing to the Bank and the MVEDC, but he argues that subroga-

tion should be allowed in this case because not to do so would allow the unsecured creditors to reap a windfall. (*Id.* at 9–10.) He argues that, in the alternative, the Defendant should be allowed to assert an administrative expense claim for a percentage of the post-petition mortgage payments he made, as well as the payments he made for improvements and maintenance expenses relating to the Real Estate.[4]

## II. ANALYSIS

The Trustee makes a facially compelling argument that the Debtor became the sole owner of the Real Estate when the Domestic Relations Court entered the Divorce Decree. He cites *In re Estate of Dinsio*, 159 Ohio App. 3d 98, 823 N.E.2d 43 (Ohio App. 2004), for the proposition that title passed to the Debtor when the Domestic Relations Court entered the Divorce Decree. Although the facts in *Dinsio* are distinguishable from the facts in the instant case, there are similarities. Vincent and Patricia Dinsio divorced in 1977. The divorce judgment provided that, pursuant to an oral agreement, by way of property settlement, Patricia was awarded certain real estate in Canfield, Ohio ("Canfield Property"). The divorce judgment further required each party to execute and deliver any and all deeds or certificates of transfer necessary to effectuate this award and, in the event that one or both of the parties failed to execute and deliver the requisite documents, the divorce judgement could be recorded as an instrument of transfer. Despite the divorce judgment, Vincent continued to reside at the Canfield Property. He died intestate in 1998. In January 1999, the probate court issued a certificate of transfer of the Canfield Property to Vincent's five adult children. Patricia did

not learn of the transfer (although she was aware of Vincent's death) until 2002 when she recorded the divorce judgment and sought to have the transfer of the Canfield Property set aside. The magistrate concluded that (i) Patricia became the sole owner of the Canfield Property at the time of the divorce; (ii) filing the divorce judgment with the clerk's office gave everyone actual notice; and (iii) filing the divorce judgment with the recorder's office was a ministerial rather than a substantive act. The court of appeals agreed, holding,

> The judgment entry of divorce awarded [Patricia] ownership of the property. The domestic relations court that presided over [Patricia's] and [Vincent's] divorce had the authority to enter a judgment divesting [Vincent] of the title to the property and vesting it in [Patricia], and that judgment had the effect of a conveyance executed in due form of law. Civ. R. 70. It was not necessary for [Vincent] or [Patricia] to record the deed to transfer title to [Patricia]. A deed does not have to be recorded to pass title.

*Id.* at 103.

*Dvorak v. Dvorak*, No. 2006–P–0003, 2006 WL 3772295 (Ohio App. Dec. 22, 2006) supports this holding. In *Dvorak*, the divorce court awarded the wife the marital residence subject to her obligation to pay the underlying mortgage and to hold the husband harmless. The wife was granted 60 days to refinance the joint mortgage. If the wife was not able to timely obtain refinancing, the husband was granted a conditional right to refinance and buy out the wife's equity. The court held that the right to refinance is not a property right in and of itself and that the husband's right to refinance did not affect the transfer of

---

4. This argument appears for the first time in the Defendant's Brief. The Defendant did not raise the argument in his Answer or at Trial.

the residence to the wife. *But cf. Tenney v. St. Clair*, No. OT–12–011, 2013 WL 1799080 ¶ 4 (Ohio App. Apr. 26, 2013) ("The trial court found that appellant was awarded all right and title to the property contingent upon his obtaining financing and found that, due to the contingency, there was no final adjudication of the parties' property rights, which therefore entitles appellee to partition.") Unlike the *Dvorak* and *Tenney* cases, Ms. Brown was not required by the Separation Agreement to refinance the debt against the Real Estate. The Debtor merely assumed liability for such debt and agreed to hold the Defendant harmless relating thereto. Thus, unlike the facts in the *Tenney* case, the transfer to the Debtor was not subject to a contingency.

■ To determine the applicability of the Trustee's position, it is necessary to examine the Browns' Divorce Decree. The Divorce Decree expressly provides: "The Separation Agreement of October 10th, 2008, entered into by and between the Petitioners, which is attached hereto and made a part hereof, is fair, reasonable and equitable, and the Court hereby ratifies, approves and confirms the same, and <u>orders its terms into effect</u>." (Jt. Ex. IV ¶ 3 (emphasis added).) Thus, the Separation Agreement was incorporated into and became part of the Divorce Decree and the Domestic Relations Court ordered its terms to be effective. As a consequence, the language of the Separation Agreement controls the disposition of the Real Estate.

The Court first finds that there is no basis for the Defendant's argument that the Separation Agreement dealt only with the business operation of Page's Restaurant, but did not cover transfer of the Real Estate. Article V of the Separation Agreement is titled "Division of Property" and states that it covers, "All property, wheresoever situated, which the parties own in-

dividually or jointly." (Jt. Ex. IV, Sep. Agr. Art. V.) This section then goes on to provide:

> A. The wife shall continue to operate the business known as PAGES, located at 1472 Churchill–Hubbard Rd, as its sole owner. The Husband hereby relinquishes any ownership or profits from PAGES. Wife agrees that Husband shall be held harmless from any past, present, or future liabilities from business operations of PAGES.

(*Id.*) If the Defendant's argument were to be given effect, the parties made no provision for the division of the Real Estate, which was property that they jointly owned at the time they entered into the Separation Agreement. This failure would be in direct contradiction to the opening statement in Article V, which states that the section covers "all property" jointly or individually owned by the Browns. Subsection A specifically references the street address of the Real Estate. Moreover, subsection G of this same article of the Separation Agreement expressly provides that the Debtor assumes liability for the debts to the Bank and the MVEDC, which debts relate only to the Real Estate. The Court finds that the only reasonable and tenable (to use the Defendant's own word) interpretation of the Separation Agreement is that the Debtor was awarded the Real Estate—as well as the business of Page's Restaurant—as part of the division of marital property.

The Separation Agreement further provides that it can only be modified or any of its provisions waived if such action is done "in writing and executed with the same formality as this Agreement." (*Id.* Art. XII.) Article VIII of the Separation Agreement provides, "This agreement or <u>any amendment</u> thereto <u>shall be submitted to the Court</u> of Common Pleas, Domestic Relations Division, Trumbull County, Ohio

[sic] shall be incorporated into the final decree of said Court as the Order of said Court." (*Id.* Art. VIII (emphasis added).)

Article IX of the Separation Agreement provides that, within 15 days after journalization of the Divorce Decree, each party will execute and deliver any and all documents or instruments necessary to effectuate the terms of the Agreement and permit the other party to take possession of all property as divided in the Agreement. It further provides, "Upon the failure of either party to execute and deliver any such deed, conveyance, title or certificate or other document or instrument of [sic] the other party, this instruments [sic] shall constitute and operate as such properly executed document and the County Auditor and County Recorder ... are hereby authorized and directed to accept this Agreement or a properly certified copy thereof in lieu of the document regularly required for such conveyance or transfer." (*Id.* Art. IX.)

Last, Article XV[5] provides, "The parties further agree that this Agreement shall be effective and binding upon the first day hereinabove written[6], and shall continue to be effective notwithstanding the fact that the parties may fail to obtain a Decree of Dissolution or Decree of Divorce as contemplated as of this date." (*Id.* Art. XV.)

■ The Separation Agreement was entered into effective October 10, 2008. The Contract was subsequently executed on October 22, 2008. The Defendant asserts that the Contract was a modification of the Separation Agreement and provided different terms upon which the Debtor would acquire title to the Real Estate. However, the Contract does not purport to be an amendment or modification to the Separation Agreement nor does it even reference the Separation Agreement. The Contract

states that the "agreement is ... in consideration of Divorce/Dissolution proceedings ...." (Jt. Ex. V at 1.) The Defendant argues,

> The fact that the Contract ... was specifically intended by the Browns as part of the Dissolution is demonstrated by the by [sic] (1) the preamble of that Agreement which states that it was "in consideration of divorce/dissolution proceedings ...;" (2) the fact that it was executed by the Parties, as part of the overall implementation of the dissolution on October 22, 2008; and (3) that it was not filed for record until after the Journal Entry Decree of Dissolution was filed for record in the State Domestic Relations Court on November 24, 2008 at 9:22 a.m.

(Def. Br. at 4 (citation omitted).) However, this Court finds that these facts actually cut against the Defendant's argument and, instead, support the Trustee's position.

First, if the Contract was meant to be a modification or amendment to the Separation Agreement, it should have so indicated. Even assuming, arguendo, that the Contract could be considered to be a modification or amendment to the Separation Agreement, the Defendant's argument is still unavailing. The Separation Agreement specifically states that "any amendment" to the Separation Agreement "shall be submitted to the [Domestic Relations Court and] shall be incorporated into the final decree of said Court ...." (Jt. Ex. IV, Sep. Agr. Art. VIII (emphasis added).) There is no dispute that the Contract was not submitted to the Domestic Relations Court and it was not incorporated into the Divorce Decree.

Moreover, the Contract cannot be an amendment or modification of the Separation Agreement because the two agree-

---

**5.** There do not appear to be any Articles XIII or XIV.

**6.** October 10, 2008.

ments are not between the same parties. Unlike the Separation Agreement, which is between the Debtor and the Defendant, the Contract is between the Debtor and the "vendor," which is defined as the Debtor and Defendant jointly. The fact that the parties to the Contract are different from the parties to the Separation Agreement demonstrates that it is an entirely separate agreement rather than an amendment to the Separation Agreement.

The Contract fails as an enforceable agreement because there is a lack of consideration.[7] In the Separation Agreement, the Debtor was awarded the Real Estate as part of the division of marital property; her only obligations were to assume liability for and pay the debts owing to the Bank and the MVEDC and to hold the Defendant harmless for such debts.[8] The Debtor was not obligated to refinance the Bank loan or the MVEDC loan. In contrast to the Separation Agreement, the Contract provides that, if the Debtor defaults in making certain payments and *vendor* pays the obligations, the *vendor* is entitled to reimbursement plus ten percent interest. The Separation Agreement does not provide for the Defendant to make any payments on the liabilities assumed by the Debtor and certainly does not provide for the payment of interest in the event he makes any payments on debts the Debtor assumed. The Separation Agreement only provides for the Debtor to hold the Defendant harmless. Thus, because the Separation Agreement already provided for the Debtor to be awarded the Real Estate, she received no consideration for taking on the additional obligations of reimbursing the Defendant for any payments he might make on the loans plus interest. Because the Debtor did not receive any consideration for entering into the Contract, the Contract is illusory.

The fact that the Contract was recorded after the Divorce Decree does not make it an effective agreement. In addition to being an illusory contract, the Contract was recorded after the Real Estate had transferred to the Debtor and, thus, the "vendor" no longer had title to the Real Estate at the time the Contract was recorded. Because the Contract (i) was not an amendment or modification to the Separation Agreement; and (ii) was not incorporated into the Divorce Decree, the Real Estate had already transferred to the Debtor when the Divorce Decree was entered and journalized. Recording the Contract could not and did not change that effect. Indeed, contrary to the Defendant's arguments, the Contract appears to recognize that the Debtor is the sole owner of the Real Estate. In Section M, which covers "Default, remedies, and waiver," the Contract provides that "vendor at [his/her] option may initiate and bring proceedings for forfeiture and restitution of the property or bring an action for foreclosure as provided in RC Chapter 5313." (Jt. Ex. V at 3.) Foreclosure would not be necessary or possible if the vendor continued to own the Real Estate.

Based upon the law of Ohio, the Domestic Relations Court had authority to transfer the property to the Debtor as part of the dissolution proceedings. The Court

7. The Contract provides in the opening paragraph that it is "in consideration of Divorce/Dissolution proceedings captioned under case number 2008 DS 00356 in Trumbull County Family Court, Trumbull County, Ohio." This language is not helpful because the dissolution proceedings had previously been filed. There is no indication that either or both of the Browns would not go through with the divorce if the Contract was not signed. Indeed, the language is ambiguous, at best.

8. Subsection G of the Separation Agreement expressly provides that the Debtor assumes liability on these mortgages. (Jt. Ex. IV, Sep. Agr. Art. V.)

finds that the Separation Agreement, which was incorporated into the Divorce Decree, provided for the Real Estate to be unconditionally transferred to the Debtor. Thus, the Domestic Relations Court's order unconditionally transferred the Real Estate to the Debtor. At the time the Debtor filed her bankruptcy petition, she was the sole owner of the Real Estate.[9]

■ In addition, the Defendant could not and did not acquire any interest in the Real Estate when the Debtor allegedly defaulted on the Contract, threw the keys to him, and said she was "done." The Defendant argues that the Debtor abandoned her interest in the Real Estate by such actions. However, because the Ohio Statute of Frauds requires all contracts concerning the sale or transfer of land to be in writing, this alleged conduct could not constitute a transfer of the Real Estate to the Defendant. *See* O.R.C. § 1335.05.

■ The Court finds no support in state law or the Bankruptcy Code for the Defendant's arguments that he has subrogation rights. The Separation Agreement required the Debtor to hold the Defendant harmless for the debts and obligations she assumed regarding the Real Estate. It does not provide the Defendant with any other remedy—*i.e.*, it does not provide for the Defendant to have any kind of secured claim against the Real Estate. To permit the Defendant to be subrogated to the rights of other secured parties would improperly and unfairly elevate his claims and provide the Defendant with an unwar-

ranted windfall. The Defendant has not filed a proof of claim for any amounts he asserts he paid prior to the Petition Date. Based upon the claims bar date, the Defendant is now barred from asserting any such claim. The Defendant argues for the first time in his brief that he should be allowed to file an administrative expense claim for the post-petition amounts he has paid. The Court will not address this issue because it was not raised at the Trial and it is procedurally improper to assert a new claim in the post-Trial brief.

Even though the Court holds that the Debtor is the sole owner of the Real Estate, the Court will not address at this time whether the Trustee may be entitled to rent from the Defendant.[10] As the Defendant has pointed out, the Trustee has not made a demand for rent. This issue may be more appropriately addressed at a later time.

### III. CONCLUSION

The Court finds that the Defendant has no lien, claim, encumbrance, or other interest in the Real Estate and will enter judgment in favor of the Trustee.

An appropriate order will follow.

### ORDER FOLLOWING TRIAL

Before the Court is Complaint for Determination of Validity, Extent and Priority of Liens, Encumbrances and Interests ("Complaint") (Doc. 1) filed by Andrew W. Suhar, Chapter 7 Trustee ("Trustee"), on December 7, 2015. The Trustee filed his

---

9. Because the Real Estate was property of the bankruptcy estate, the Defendant's arguments regarding the Trustee's action and inaction regarding the Real Estate are irrelevant. *See* page 259, *supra*.

10. In his Brief, the Defendant discounts the Trustee's claim for rent on the grounds that (i) it was not sought in the Complaint; and (ii) the *Contract does not mention any rent* being due in the event the vendor takes possession

of the Real Estate. He attacks the comparables relied on by the Trustee's expert, Mr. Friedkin. He also argues that Mr. Friedkin's testimony concerning the fair market value of the Real Estate is speculative and unsupported and, further, the Court does not need to address the issue of the fair market value of the Real Estate. As set forth herein, the Court agrees that these arguments are not necessary for resolution of this adversary proceeding.

Complaint to determine the validity, priority, and extent of all liens, encumbrances, and other interests relating to four parcels of real property listed in Debtor Michelle L. Brown's Schedule A as parcel numbers 12–025435, 12–024306, 12–025434, and 12–025436 ("Real Estate"). Defendant Fred W. Brown ("Defendant" or "Mr. Brown") filed Answer of Fred W. Brown (Doc. 17) on February 3, 2016 asserting his interest in the Real Estate. After the Trustee settled with or obtained default judgment against each of the other defendants, Mr. Brown remains the only defendant. The Court held a trial on the remaining issues in the Adversary Proceeding on October 3, 2016, at which time the Court took this matter under advisement.

For the reasons set forth in the Court's Memorandum Opinion Following Trial entered on this date, the Court hereby finds that the Defendant has no lien, claim, encumbrance, or other interest in the Real Estate and enters judgment in favor of the Trustee.

**IT IS SO ORDERED.**